HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LOLA and MICHAEL BOUCHARD,<br><br>                     Plaintiffs,<br><br>          v.<br><br>CBS CORPORATION, et al.<br><br>                     Defendants. | CASE NO. C11-458RAJ<br><br>ORDER GRANTING MOTION<br>FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

This matter comes before the court on Defendant Saint Gobain Containers, Inc.'s ("SGC") motion for summary judgment. Dkt. # 65. This court transferred this case in May 2011 to the United States District Court for the Eastern District of Pennsylvania as part of a multidistrict litigation, MDL-875. The Honorable Eduardo C. Robreno remanded SGC's motion for summary judgment to this court for resolution. Dkt. # 60; *Bouchard v. CBS Corp.*, MDL No. 875, Case No. 11-66270 ER, 2012 WL 5462612 (E.D. Pa. Oct. 2, 2012). Having reviewed the memoranda, joint supplemental brief, declarations, exhibits, and the record herein, the court GRANTS SGC's motion for summary judgment.[1]

---

[1] This matter may be decided on the papers submitted. Accordingly, the parties' request for oral argument is DENIED.

## II. BACKGROUND

Plaintiff Lola Bouchard claims that she was exposed to asbestos brought home by her father and husband when they worked for Northwestern Glass Company ("Northwestern") at the East Marginal Way Facility in Seattle ("Facility"), and that these exposures to asbestos were substantial contributing factors in the development of her malignant pleural mesothelioma. After a series of mergers and acquisitions, Northwestern was merged into and became a part of TBG, Inc. ("TBG"). In 1987, TBG, Ball Corporation and several other entities entered into an asset purchase agreement (the "Agreement"), wherein certain assets would be purchased, including the Facility, and certain liabilities were assumed. In 1995, SGC entered into an asset purchase agreement with Ball Corporation and another entity, wherein SGC acquired the Facility as an asset. Pursuant to the 1995 agreement, SGC assumed all liabilities except for certain enumerated liabilities not applicable here.

The issue before the court is whether SGC, through TBG, assumed the liability for Ms. Bouchard's exposure to asbestos as a corporate successor under the Agreement.

## III. ANALYSIS

### A. Legal Standard

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets

the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

**B.   Applicable Law**

The parties do not dispute that Washington law applies to the successor liability issues. *See* Dkt. # 79 at 1, 7. The parties also seem to agree that New York law applies to the issue of contract interpretation since the parties to the Agreement agreed that New York law would govern interpretation of the Agreement. Dkt. # 79-1 at 123 (Agreement § 20.4), Ex. 1 to Supplemental ("Supp'l") Br. Nevertheless, both parties argue that regardless of whether Washington or New York law apply to the issue of contract interpretation, either would result in the same outcome. The court finds that New York law applies to the issue of contract interpretation pursuant to section 20.4 of the Agreement, and Washington law applies to the issue of successor liability.

**C.   Successor Liability**

With respect to corporate successor liability, traditionally, a corporation purchasing assets of another corporation does not become liable for the debts and liabilities of the selling corporation. *Martin v. Abbott Lab.*, 102 Wash. 2d 581, 609, 689 P.2d 368 (1984) (en banc). However, Washington has recognized five narrow exceptions to the traditional rule: (1) the purchaser expressly or impliedly agrees to assume liability; (2) the purchase is a *de facto* merger or consolidation; (3) the purchaser is a mere continuation of the seller; (4) the transfer of assets is for the fraudulent purpose of escaping liability, and (5) the "product-line" criteria for successor liability in products liability actions. *Id.* at 609, 614-15. In any of these circumstances, the court will find that the acquiring entity is a successor to the liabilities and obligations of the selling corporation. *Id.*

Plaintiffs argue that TBG expressly or impliedly agreed to assume liability for Ms. Bouchard's exposure to asbestos.

Under New York law, contracts are construed in accord with the parties' intent. *Dysal, Inc. v. Hub Properties Trust*, 938 N.Y.S.2d 642, 643 (N.Y. App. Div. 2012). "When the terms of a written contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving practical interpretation to the language employed and the parties' reasonable expectations." *Id.* at 644 (internal quotations omitted). The interpretation of a straightforward and unambiguous contract presents a question of law for the court to be made without resort to extrinsic evidence. *Ruttenberg v. Davidge Data Sys. Corp.*, 626 N.Y.S.2d 174, 175 (N.Y. App. Div. 1995). "Mere assertion by one that contract language means something to him, where it is otherwise clear, unequivocal and understandable when read in connection with the whole contract, is not in and of itself enough to raise a triable issue of fact. *Id.* at 176. Summary judgment is appropriate only where the intent of the parties can be ascertained from the face of their agreement. *Id.* at 178. However, when the meaning of the contract is ambiguous and the intent of the parties becomes a matter of inquiry, a question of fact is presented which cannot be resolved on a motion for summary judgment. *Id.* at 175.

Section 4.1 and 4.3 provide the relevant sections for interpretation here.

Section 4.1 provides:

> In further consideration for the sale of the TBG/InCon Assets, and subject to the limitations set forth in Section 4.3 hereof, at the Closing, the Company will assume and agree to pay or discharge all liabilities of TBG/InCon directly relating to the TBG/Incon Business including, but not limited to:
> (a) those liabilities of TBG/InCon set forth on the Adjusted Closing Date Balance Sheet of the TBG/InCon Business; and
> (b) those obligations and commitments of TBG/InCon under those contracts, leases and agreements which relate to the TBG/InCon Assets or the TBG/InCon Business, including, without limitation, those listed in Schedule 6.12.

Section 4.3 provides:

> Notwithstanding anything in section 4.1 hereof to the contrary, the Company shall not assume, pay or discharge, and shall not be liable for, any liability, commitment or expense (irrespective of whether such are contingent or fixed, known or unknown) of TBG/InCon:
>
> * * *
>
> (e)  that is both not reflected in sufficient amount on the Adjusted Closing Date Balance Sheet referred to in Section 4.1(a) hereof and arises from the conduct of the TBG/InCon Business prior to the Closing Date, other than obligations and commitments of TBG/InCon under contracts, leases and agreements which relate to the TBG/InCon Assets and the TBG/InCon Business.

Dkt. # 66-8 at 14-15 (Ex. H to Ricketts Decl. at 18-19).

Plaintiffs argue that Ms. Bouchard's exposure to asbestos falls within the "obligations and commitments" exception to 4.3(e).  Relying on extrinsic evidence[2] to do so, plaintiffs argue that Ms. Bouchard's husband was an employee of Northwestern, that under Washington law, his employment was based on contract, express or implied, that Ms. Bouchard was exposed to the asbestos that her husband brought home on his clothes by washing his contaminated clothing, that Northwestern owed an independent duty to persons foreseeably injured by tasks or instrumentalities carried out or used by its employees, and that Ms. Bouchard was a foreseeable victim.  Dkt. # 71 at 14-15.  However, the independent duty to foreseeable victims (such as Ms. Bouchard) is a duty in tort, not contract.

The court finds that reasonable minds cannot differ.  The only reasonable interpretation of "obligations and commitments" "under contracts, leases and agreements" are contractual obligations and commitments, not tort duties or obligations.[3]  This conclusion is bolstered when the contract is read as a whole.  Section 4.1(b) refers to

---

[2] The court finds that the terms of the contract are not ambiguous and the intent of the parties are clear from reviewing the contract as a whole.

[3] This conclusion applies equally whether the court applies New York or Washington law.

examples of "obligations and commitments" in Schedule 6.12.  Schedule 6.12 provides examples of "obligations and commitments . . . under those contracts, leases and agreements[,]" including reference to "contracts" and "agreements" on file with specific customers and entities.  Dkt. # 79-2 (Ex. 2 to Supp'l Br.).  Notably absent from the Schedule is any indication that the parties intended a duty in tort to be included in their understanding of the term "obligations and commitments."

      Plaintiffs also argue that the term "arises from" and the use of "and" instead of "or" preceding subsection (e) creates an ambiguity that precludes summary judgment.  The court disagrees.  Plaintiff's only argument relies on a citation to an inapposite Third Circuit case that found that term ambiguous as used in a particular statute.  Plaintiffs have failed to demonstrate that an ambiguity exists with respect to the term "arises from."

      With respect to the use of "and" instead of "or," plaintiffs argue that the limitations set forth in 4.3(d)-(e) are conjunctive, not disjunctive, which would require the presence of both subsections (d) and (e) for the limitation to apply.  However, under such an interpretation, the court would be required to include all of the limitations in subsections (a) through (e).  Such a requirement would mean that the TBG, and any successor to liability, could disclaim assumption of liability only if the liability simultaneously involved (a) negotiation of the Agreement, (b) federal, state, or local tax obligations, (c) breach of any representation, warranty or covenant in the Agreement, (d) reimbursement by insurance or the statute of limitations bar, **and** (e) the liability not being reflected on the balance sheet at closing and arising from TBG's business prior to closing, other than obligations and commitments under contracts relating to TBG's business.  Such an interpretation would render each subsection ineffective and unenforceable on its own.  An interpretation that gives effect to all the terms of an agreement is preferable to one that ignores terms or accords them an unreasonable interpretation.  *Ruttenberg*, 626 N.Y.S.2d at 177.  Accordingly, the only reasonable interpretation that gives effect to every subsection is that advanced by defendant.


Accordingly, the interpretation of the unambiguous Agreement presents a question of law for the court that may resolved on summary judgment without reference to extrinsic evidence.[4]

### IV. CONCLUSION

For all the foregoing reasons, the court GRANTS SGC's motion for summary judgment. Having granted SGC's motion for summary judgment, the clerk is DIRECTED to terminate plaintiffs' motion to set a trial date. Dkt. # 63. In its motion to set trial, plaintiffs represent that all claims have been resolved against all defendants except SGC. Plaintiffs are ORDERED to advise the court within fourteen (14) days of this order whether this case should be terminated and judgment entered against plaintiffs and in favor of SGC.

Dated this 27th day of December, 2012.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

---

[4] The court is also not persuaded by plaintiffs' argument that counsel's confirmation of the term "successor" is an admission that SGC conceded corporate successor liability, or that this creates an issue of material fact. Washington law is clear that a corporation purchasing assets of another corporation does not become liable for the debts and liabilities of the selling corporation unless an exception applies. *Martin*, 102 Wash. 2d at 609. Counsel's attempt to orient a witness during a deposition does not create an issue of material fact with respect to whether SGC assumed the liability for Ms. Bouchard's exposure to asbestos as a corporate successor under the Agreement.